**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| DAWN CARTON, JAMES CARTON, JODI FELLER, TERRY FELLER, CODY MEDINGER, STEPHANIE NIELAND, | |
| Plaintiffs, | No. 08-CV-1032-LRR |
| vs. | **ORDER** |
| GENERAL MOTORS ACCEPTANCE CORPORATION, | |
| Defendant. | |

_____

### *TABLE OF CONTENTS*

I.      *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . **2**

III.    *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . **2**

IV.     *RULE 12(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *A.      Material Beyond the Pleadings* . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *B.      Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

V.      *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *A.      Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *B.      Ms. Gannon* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *C.      Lease* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *D.      Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
    *E.      Ms. Gannon Retains the Vehicle* . . . . . . . . . . . . . . . . . . . . . . . . **6**
    *F.      Accident* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

VI.     *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *A.      Choice of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *B.      Vicarious Liability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
        *1.      Graves Amendment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
            *i.      Effect of the Replevin Judgment on the Lease* . . . . . . **13**

           *ii.*     *Constitutionality of the Graves Amendment* . . . . . . . . **14**

     **2.**    *Iowa Code § 321.493* . . . . . . . . . . . . . . . . . . . . . . . . . **17**

           *i.*     *"Owner" of the Vehicle* . . . . . . . . . . . . . . . . . . . . . **17**

           *ii.*     *Constitutionality of § 321.493* . . . . . . . . . . . . . . . . . **19**

  **C.**    **Negligence** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

**VII.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

# I.  INTRODUCTION

The matter before the court is Defendant General Motors Acceptance Corporation's Motion to Dismiss ("Motion") (docket no. 9).

# II.  RELEVANT PROCEDURAL BACKGROUND

On September 24, 2008, Plaintiffs Dawn Carton, James Carton, Jodi Feller, Terry Feller, Cody Medinger and Stephanie Nieland filed the Complaint (docket no. 2).  In the Complaint, Plaintiffs allege Defendant is vicariously liable for the negligence of a third party who caused an accident that injured Plaintiffs.  Plaintiffs also allege Defendant is liable for its own negligence.

On December 29, 2008, Defendant filed the Motion.  In the Motion, Defendant asks the court to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.  On February 20, 2009, Plaintiffs filed a Resistance (docket no. 23).  On March 13, 2009, Defendant filed a Reply (docket no. 33).

On April 14, 2009, the court held a hearing on the Motion.  Attorney Steven J. Crowley represented Plaintiffs.  Attorney Stephanie L. Hinz represented Defendant.  The Motion is fully submitted and ready for decision.

# III.  SUBJECT MATTER JURISDICTION

In the Motion, Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant claims Wisconsin law ought to govern Plaintiffs' claims and caps Plaintiffs' total damages at $50,000, which is less than the $75,000 amount in controversy set forth in 28 U.S.C.

§ 1332, the relevant subject matter jurisdiction statute. As discussed more fully below, the court declines to apply Wisconsin law in the instant action, which moots this aspect of Defendant's jurisdictional challenge.

Diversity must be complete, meaning "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007). Plaintiffs allege they are all Iowa residents and that the Defendant is domiciled in Delaware. Plaintiffs also allege that the amount in controversy exceeds $75,000. The court is satisfied that diversity jurisdiction exists in this case pursuant to 28 U.S.C. § 1332.

## IV. RULE 12(b)(6)

### A. Material Beyond the Pleadings

Generally, a court reviewing a motion to dismiss pursuant to Rule 12(b)(6) only considers the factual allegations in the complaint. *Riley v. St. Louis County of Mo.*, 153 F.3d 627, 629 (8th Cir. 1998). In this case, however, Defendant filed a substantial amount of evidence in support of the Motion that is not referenced in the Complaint. A district court "has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. USDA*, 327 F.3d 697, 701 (8th Cir. 2003) (internal citation and quotation marks omitted). If the court accepts material beyond the pleadings, the motion to dismiss is generally converted into a motion for summary judgment under Federal Rule of Civil Procedure 56. *Id.* If the court converts a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court declines to review the Motion under the summary judgment standard and shall not consider the extraneous material the parties filed, except to the extent some of the material falls into a recognized exception to the general rule of conversion.

In its Rule 12(b)(6) analysis, the court may consider public records the parties filed in support of their respective positions, because courts have created exceptions to the general rule of conversion for public records. *See, e.g.*, *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (noting a court may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint). In this case, the court may consider the court records Defendant filed in support of the Motion, *see* Defendant's Appendix ("Def. App'x" (docket nos. 12-2, 3 & 4), at 7-14, as well as the confirmation of security interest, *see id.* at 5. The court may also examine "materials that are 'necessarily embraced by the pleadings.'" *Porous Media*, 186 F.3d at 1079 (quoting *Piper v. Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)). Under this exception, the court may consider the motor vehicle lease at issue and a copy of a complaint in a related case, which are attached to the Complaint as Exhibits A and B, respectively.[1] The remaining evidence does not fall within any exception to the summary judgment conversion rule, and the court shall not consider it.[2]

### B. Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a claim for a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, the court must view the allegations in the complaint in the light most favorable to the non-moving party. *In re Operation of Mo.*

---

[1] The complaint in the related case also falls within the public records exception to the conversion rule.

[2] Plaintiffs also submitted evidence in support of their Resistance in the event the court converted the Motion to a summary judgment motion. The only material submitted by Plaintiffs that the court considers for purposes of its Rule 12(b)(6) analysis is the motor vehicle accident report, which is a public record. *See* Plaintiffs' App'x (docket no. 23-2), at A1-A31.

*River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir. 2005). The court must accept all the factual allegations in the complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing, in part, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). In a complaint, a plaintiff must set forth his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008); *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) ("The plaintiffs need not provide specific facts in support of their allegations, but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." (internal citation omitted)).

## V. FACTUAL BACKGROUND

Viewed in the light most favorable to the non-moving parties, Plaintiffs, the relevant facts are:

### A. Parties

Dawn Carton and James Carton are married and reside in Iowa. Jodi Feller and Terry Feller are also married and reside in Iowa. Cody Medinger and Stephanie Nieland are residents of Iowa. Defendant is a Delaware corporation. Defendant finances and leases General Motors vehicles in Iowa and elsewhere in the United States.

### B. Ms. Gannon

Tiffany J. Gannon is an Illinois resident. At all times relevant to the Complaint, Ms. Gannon was enrolled as a student at a post-secondary school in Wisconsin.

### C. Lease

On December 7, 2006, Ms. Gannon entered into a lease ("Lease") (docket no. 2-3) with Ballweg Chevrolet, Inc., located in Middleton, Wisconsin. The Lease was for a new

2006 Chevrolet Cobalt (the "Vehicle"). Pursuant to the Lease, Ms. Gannon was required to make monthly payments of $205.95 for a period of 48 months, put no more than 48,045 miles on the Vehicle and maintain liability insurance on the Vehicle. Ballweg Chevrolet, Inc. assigned the Lease to Defendant.

The Lease was scheduled to end "one month after the last payment [was] due." Lease at ¶16. However, the Lease provides that Defendant may end the Lease if Ms. Gannon is in "default." *Id.* ¶ 17. A "default" occurs if a payment "is more than 10 days past due." *Id.* at ¶ 18. The Lease allowed Ms. Gannon to cure a default. In the event Ms. Gannon failed to cure a default, Defendant could elect to do the following: (1) end the Lease and require Ms. Gannon to pay a charge; (2) sue Ms. Gannon for damages and for return of the Vehicle; and (3) pursue any other remedy provided by law.

### D. Default

At some point subsequent to the execution of the Lease, Ms. Gannon stopped making payments on the Lease and failed to maintain insurance for the Vehicle. On February 27, 2007, Defendant filed a "Complaint in Replevin" (docket no. 2-4) in the Dane County Circuit Court in Wisconsin ("Wisconsin Circuit Court"), Case Number 2007SC002605. In the Complaint in Replevin, Defendant alleged Ms. Gannon had defaulted on the Lease because she had failed to make Lease payments on time. Defendant asked the Wisconsin Circuit Court to return possession of the Vehicle to Defendant. On April 20, 2007, the Wisconsin Circuit Court entered a judgment for replevin ("Replevin Judgment") in favor of Defendant and against Ms. Gannon.

### E. Ms. Gannon Retains the Vehicle

Subsequent to the entry of the Replevin Judgment, Ms. Gannon retained possession of the Vehicle. Ms. Gannon continued to drive the Vehicle without insurance.

### F. Accident

On July 14, 2007, at approximately 2:15 p.m., Plaintiffs were riding motorcycles

west on Highway 11-14 east of Janesville, Wisconsin. This portion of Highway 11-14 has two lanes and no median. At that same time, Ms. Gannon was driving the Vehicle east on that portion of Highway 11-14. As Ms. Gannon approached Plaintiffs, the Vehicle crossed the center line from her lane and into the westbound lane. The Vehicle collided with Plaintiffs. All of the Plaintiffs were injured.

## VI. ANALYSIS

### A. Choice of Law

The parties quarrel over the applicable law. Plaintiffs allege Iowa law applies and makes Defendant vicariously liable for Ms. Gannon's negligence, pursuant to Iowa Code § 321.493 (2007). Defendant argues Wisconsin law governs. Wisconsin does not have a vicarious liability statute for motor vehicle liability.

The parties agree that, because Iowa is the forum state, its choice of law rules govern the court's determination of the applicable substantive law. *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 523 (8th Cir. 2003) (citing *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994)). "[T]he Iowa Supreme Court has repeatedly turned to the Restatement in analyzing choice of law issues." *Washburn v. Soper*, 319 F.3d 338, 342 (8th Cir. 2003). The Iowa Supreme Court "now follow[s] the [Restatement (Second) Conflict of Laws (1971) ("Restatement")]'s 'most significant relationship' methodology for choice of law issues." *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). "The theory behind this approach is that rather than focusing on a single factor, 'the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation.'" *Id.* at 898 (quoting *Fuerste v. Bernis*, 156 N.W.2d 831, 834 (Iowa 1968)). The "most significant relationship test" is found in § 145 of the Restatement and provides:

> (1)　The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most

significant relationship to the occurrence and the parties under the principles stated in § 6.

    (2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
        (a)    the place where the injury occurred,
        (b)    the place where the conduct causing the injury occurred,
        (c)    the domicil, residence, nationality, place of incorporation and place of business of the parties, and
        (d)    the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145; *see also id.* § 148(1). In turn, § 6 of the Restatement provides:

    (1)    A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

    (2)    Where there is no such directive, the factors relevant to the choice of the applicable rule of law include:
        (a)    the needs of the interstate and international systems,
        (b)    the relevant policies of the forum,
        (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
        (d)    the protection of justified expectations,
        (e)    the basic principles underlying the particular field of law,
        (f)    certainty, predictability and uniformity of result, and
        (g)    ease in the determination and application of the law to be applied.

*Id.* at § 6.

First, the court analyzes the § 145(2) contacts. For purposes of this analysis, the Iowa Supreme Court has recognized that the place where the injury occurred, Wisconsin, has little importance when that state has no other interest in the case. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987). However, the conduct causing the injury occurred in Wisconsin, which weighs in favor of applying Wisconsin law. And, the parties' relationship, which ostensibly arises from the Lease and the accident, is centered in Wisconsin. In contrast, the domicile of the parties weighs in favor of the application of Iowa law—none of the parties are domiciled in Wisconsin and all six Plaintiffs are residents of Iowa.

At first blush, it appears the application of Wisconsin law is more appropriate. However, when the court considers the § 6 factors in light of a similar Iowa case, it appears more likely that Iowa law applies.

In conducting its analysis of the § 6 factors, the court turns to *Veasley*. *Veasley* conducted a choice of law analysis in a negligence action brought by an Iowa resident against the owner of a vehicle that caused an accident that injured the plaintiff in Arizona. *Veasley*, 553 N.W.2d at 897. In choosing to apply Iowa law, the Iowa Supreme Court noted the following in its § 6 analysis:

> The factor involving ease of determination of the conflicting rules of law is of little importance in the present case. Either [Defendant] may be held liable or it may not. No esoteric or complex substantive laws are involved.

> Certainty, predictability, and uniformity of result are also less important in automobile tort cases. Conflicting laws are a result of the combination of a mobile society, and America's federal system in which the states have primary control over the regulation of these matters will always work against uniformity.

*Veasley*, 553 N.W.2d at 898 (internal citations and quotation marks omitted). The court

understands this portion of the *Veasley* decision to hold that the sixth and seventh factors in the § 6 analysis, uniformity of result and ease in determination of the applicable law, carry little weight. Accordingly, in the instant analysis, the court shall not attribute substantial weight to these factors.

Next, *Veasley* addressed the fourth § 6 factor, the protection of justified expectations, as follows:

> The protection of justified expectations is, according to several modern authorities, of scant relevance in automobile cases. According to [*Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973)], no one plans to have an accident. Furthermore, [Defendant] is a nationwide trucking firm. The trip involved in this case commenced in California. California has an owner liability statute. Since twelve states have owner liability statutes, it would be reasonable for [Defendant] to expect liability and to protect itself accordingly. [Defendant] chose to register the truck involved in Iowa, and it chose to make Iowa its principal place of business. It reasonably could have foreseen that Iowa law would apply in situations such as this.

*Id.* at 898-99 (internal citations and quotation marks omitted). Although the Vehicle was not registered in Iowa and Defendant's principal place of business is not in Iowa, Defendant conducts business in Iowa; that is, enters into motor vehicle leases in Iowa. Also, as a nationwide lessor of automobiles, Defendant could have reasonably expected to be subject to motor vehicle liability statutes in various states, including Iowa. Therefore, the court concludes Defendant could have reasonably foreseen that Iowa law would apply to situations such as the one at issue in this case.

*Veasley* then addressed the first § 6 factor, the needs of the interstate and international systems, in the following manner:

> Respect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a "substantial connection" with the issue. We believe, based

> on the deterrence policy underlying [§] 321.493, that Iowa has
> a substantial connection regarding the possibility of all persons
> or corporations with a local nexus that loan or lease motor
> vehicles to other entities. Moreover, Iowa's owner liability
> law is not so abnormal that an application of Iowa law would
> greatly disrupt interstate order. At least twelve states have
> owner liability laws.

*Id.* at 899 (internal citations omitted). By virtue of doing business in Iowa, Defendant has a local nexus with the forum state. In light of *Veasley*, it appears the court must conclude that Iowa has a substantial connection with the liability issue. Accordingly, the court finds the application of Iowa law would maintain respect for the interstate and international system.

Next, *Veasley* addressed the second and fifth § 6 factors, the relevant policies of the forum state and the principles underlying the field of law at issue, vehicle owner liability, together. In its analysis of these factors, the Iowa Supreme Court states § 321.493 "was passed to recognize the dangers posed by the common use of automobiles," and recognized that "one of the purposes of [§] 321.493 is to make vehicle owners responsible for the actions of others to whom they have entrusted their motor vehicles." *Id.* *Veasley* concluded, "*[t]o enforce [. . .] owners' liability statute[s] on the basis of where the accident occurred would undermine the[ir] effectiveness[.]*" *Id.* (quoting *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 856 (1982) (emphasis in *Veasley*). In light of this analysis, the court believes it must find Iowa's policy underlying its vehicle owner liability law, the same law at issue in *Veasley*, weighs heavily in favor of the application of Iowa law in this case. To conclude otherwise would directly contradict Iowa's choice of law jurisprudence.

*Veasley* considered the remaining § 6 factor, the relevant policies of other interested states and those states' interests relative to the law at issue, by examining *Haggerty v. Cedeno*, a case in which a New Jersey court chose to apply New York law in a case

11

involving an accident that had occurred in New Jersey by a vehicle registered in New York and rented from a Delaware corporation. *Id.* (citing *Haggerty*, 279 N.J. Super. 607 (1995)). At that time, New York had a vehicle owner liability statute and New Jersey did not. The Iowa Supreme Court observed that the New Jersey court "balanced the competing interests by concluding that New York's statute had a deterrent purpose, and there was no New Jersey defendant which needed to be protected by that state's fault-based scheme of owners' liability." *Id.* Consequently, the New Jersey court held that New York law controlled. *Id. Veasley* applied the New Jersey court's reasoning to its case and concluded that, because Iowa had a statute with a deterrent purpose and determinative effect on the plaintiffs' rights and Arizona did not, Iowa law should apply—not Arizona law. In light of this reasoning, the court reaches a similar conclusion here: unlike Wisconsin, Iowa has an owner liability statute determinative of Plaintiffs' claims. This statute has an underlying deterrent purpose. The court finds that this factor weighs in favor of the application of Iowa law.

When viewing the § 145(2) factors and the § 6 factors together in light of *Veasley*, the court concludes that an Iowa court would apply Iowa law in this situation.[3] In sum, the court shall apply Iowa law in the instant action.

### B. Vicarious Liability

Defendant argues the court should dismiss Plaintiffs' vicarious liability claims because (1) the Graves Amendment, 49 U.S.C. § 30106, bars vicarious liability against lessors for motor vehicle accidents; and (2) Iowa's vicarious liability statute does not apply to Defendant because Defendant is not the "owner" of the Vehicle.

---

[3] The court stresses that it does not necessarily endorse *Veasley*'s sweeping application of the Restatement. The court only makes a prediction as to how the Iowa Supreme Court would rule if it were presented with these facts.

### 1.    Graves Amendment

Defendant argues the Graves Amendment bars Plaintiffs' vicarious liability claims under Iowa Code § 321.493. The Graves Amendment is "a federal tort reform statute which purports to shield rental car companies from certain vicarious liability suits." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1244 (11th Cir. 2008). The Graves Amendment states, in relevant part:

> **(a) In general.**—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> **(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> **(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a) (emphases in original). Plaintiffs do not dispute that, if applicable, the Graves Amendment preempts their vicarious liability claims against Defendant under Iowa Code § 321.493. Plaintiffs argue the Graves Amendment does not apply because (1) the Lease terminated when the Replevin Judgment entered and (2) it is unconstitutional.

### i.    Effect of the Replevin Judgment on the Lease

Plaintiffs plead that, on the day the Replevin Judgment entered, Defendant terminated the Lease "[a]s a result of the [Replevin Judgment.]" Complaint at ¶ 13. Plaintiffs reason the Graves Amendment therefore cannot apply because it only bars lessor liability for harm occurring "during the period of the rental or lease." 49 U.S.C. § 30106(a). However, Plaintiffs' allegation that the Replevin Judgment terminated the Lease is an incorrect statement of law. Although the court is required to accept as true all

factual allegations in the Complaint, it is "'free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.'" *Farm Credit Serv. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002)).

In Wisconsin, a replevin judgment "determine[s] only the right to possession of the collateral or leased goods, but such judgment shall not bar any subsequent action for damages or deficiency[.]" Wis. Stat. § 425.205(1)(e). Stated another way, when a lessor elects to pursue a replevin judgment, the replevin judgment merely gives a lessor the right to repossess the property subject to the replevin judgment—it does not provide for the termination of any underlying obligation by operation of law. *Id.*; *see also First Fed. Sav. Bank La Crosse-Madison v. Vetterkind*, 96-0807-FT, 1996 WL 393672, *2 (Wis. App. July 16, 1996) ("[T]he unambiguous meaning of § 425.205(1)(e) [. . .] is that the judgment in an action for recovery of collateral cannot provide relief other than replevin."). Accordingly, the court finds that the Replevin Judgment did not terminate the Lease.

Because the Lease was still intact when the accident occurred, the Graves Amendment protects Defendant from vicarious liability for the acts of its lessee, Ms. Gannon. Accordingly, the court shall dismiss Plaintiffs' vicarious liability claims.

### ii. Constitutionality of the Graves Amendment

Plaintiffs also argue the Graves Amendment violates equal protection laws under the Iowa and United States Constitutions because it creates two unequal classes of plaintiffs injured by automobile accidents: "those who have a right to recover from the owner and those whose right is permanently extinguished because the vehicle being driven with the consent of the owner, which caused the harm, was leased from a company like [Defendant]." Resistance Brief ("Resistance Br.") (docket no. 23-3), at 19. There is no such classification. The Graves Amendment does not bar victims of an automobile accident from seeking damages for their injuries; however, the person from whom a

plaintiff seeks recovery may not necessarily have deep pockets. However, not every lessee of a vehicle is judgment-proof, and assuming that to be the case would require the court to speculate. Stated another way, the Graves Amendment permits all victims of automobile accidents to seek recovery for their injuries, but whether such recovery is feasible is a different issue. Accordingly, Plaintiffs' equal protection challenge fails. *See Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998) ("To state an equal protection claim, [a plaintiff] must have established that he [or she] was treated differently from others similarly situated to him [or her]."); *State v. Wade*, 757 N.W.2d 618, 625 (Iowa 2008) ("Where there is no disparate treatment of similarly situated individuals, an equal protection claim fails.").[4]

Even if a separate classification existed, Plaintiffs could not show that it is unconstitutional. "'When an equal protection claim is neither based on a "suspect class" or grounded in a fundamental right, it is subject to a rational basis review.'" *Hawkeye Commodity Promotions, Inc. v. Miller*, 432 F. Supp. 2d 822, 858-59 (N.D. Iowa 2006) (quoting *Gilmore v. County of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005)). In such a case, the court "'presumes legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest.'" *Gilmore*, 406 F.3d at 939 (quoting *Chance Mgmt., Inc. v. South Dakota*, 97 F.3d 1107, 1114 (8th Cir. 1996)). Stated another way, the court must uphold the statute "if there is any reasonably conceivable state of fact that could provide a rational basis for the classification."

---

[4] Tellingly, there do not appear to be any published district court cases discussing an equal protection challenge to the Graves Amendment. Rather, parties who present constitutional challenges to the Graves Amendment tend to argue that this statute violates the Commerce Clause. Such claims routinely fail. *See, e.g. Garcia*, 540 F.3d at 1253 (concluding the Graves Amendment is "valid" because, "[i]t is plain that the rental car market has a substantial effect on interstate commerce" and "Congress rationally could have perceived strict vicarious liability for the acts of lessees as a burden on that market.").

*Hawkeye Commodity*, 432 F. Supp. 2d at 859 (internal quotation marks omitted). The challenging party carries the burden to show the classification is not rationally related to a legitimate government objective. *Id.*

Plaintiffs argue the classification is unreasonable because it conflicts with Iowa's vicarious liability law and makes lessors more likely to lease to irresponsible drivers. This is insufficient to meet Plaintiffs' burden. As the *Garcia* court noted, "[s]tatements in the Graves Amendment's legislative history suggests that its proponents indeed perceived vicarious liability as a burden on consumers, and as reducing the number of firms able to compete in the rental car market." 540 F.3d at 1253 n.6. (citing 151 Cong. Rec. H1034-01 at *H1200 (Statement of Rep. Graves) (stating that vicarious liability costs consumers $100 million annually and drives small firms out of business); *see also* 151 Cong. Rec. S5433-03 (Statement of Sen. Santorum) (similar)). The Graves Amendment is clearly rationally related to a legitimate governmental interest.

The result is the same under the Iowa Constitution, but for a different reason. Even if the court assumed the Graves Amendment violated the Equal Protection Clause of the Iowa Constitution, it would nevertheless be upheld because it is a valid federal law and therefore preempts conflicting state laws. *See, e.g. Garcia*, 540 F.3d at 1245 (finding Graves Amendment preempts inconsistent Florida law, stating "[a] valid federal statute preempts any state law with which it actually conflicts."); *see also* U.S. Const., art. VI, cl.2 (stating federal law "shall be the supreme Law of the Land; [. . .] any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"). The Iowa Constitution is nothing more than a state law, though of the highest nature, and is subject to the Supremacy Clause. *See Reynolds v. Sims*, 377 U.S. 533, 584 (1964) ("When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls.").

In conclusion, the court finds that the Graves Amendment bars Plaintiffs' vicarious

liability claims against Defendant.

## 2. *Iowa Code § 321.493*

Even if the Graves Amendment did not apply, the court would dismiss Plaintiffs' vicarious liability claims because they are not permitted under Iowa law. Plaintiffs allege Defendant is vicariously liable for Ms. Gannon's negligence pursuant to Iowa Code § 321.493. This statute provides, in relevant part:

> [I]n all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. For purposes of this subsection, "owner" means the person to whom the certificate of title for the vehicle has been issued or assigned or to whom a manufacturer's or importer's certificate of origin for the vehicle has been delivered or assigned. However, if the vehicle is leased, "owner" means the person to whom the vehicle is leased, not the person to whom the certificate of title for the vehicle has been issued or assigned[.]

Iowa Code § 321.493(1)(a). Defendant argues that it was not the "owner" of the Vehicle at the time the accident occurred, which exempts it from vicarious liability for Ms. Gannon's negligence. Plaintiffs argue that, under case law interpreting § 321.493, Defendant was the "owner" of the Vehicle at the time of the accident. Plaintiffs also argue that the portion of § 321.493(a)(1) exempting a lessor from a lessee's liability is unconstitutional. The court examines these arguments, in turn.

### i. *"Owner" of the Vehicle*

Defendant argues § 321.493, which holds an "owner" of a vehicle vicariously liable for the acts of its driver, does not apply because Defendant did not "own" the Vehicle at the time of the accident. Iowa Code § 321.493(1)(a). An "owner" is defined as "the person to whom the certificate of title for the vehicle has been issued or assigned." *Id.* However, "if the vehicle is leased, 'owner' means the person to whom the vehicle is leased, not the person to whom certificate of title for the vehicle has been issued or

17

assigned." *Id.* This statue defines a "lease" as "the transfer of possession or right to possession of a vehicle to a lessee for a valuable consideration for a continuous period of twelve months or more, pursuant to a written agreement." *Id.* Under the plain language of the statute, Ms. Gannon was the owner of the Vehicle at the time of the accident—not Defendant—because she was in possession of the vehicle. In other words, although Ms. Gannon no longer had the *right* to possess of the Vehicle, she still had possession of the Vehicle. Therefore, Defendant cannot be vicariously liable for Ms. Gannon's negligence under § 321.493.

Plaintiffs argue case law interpreting and applying § 321.493(1)(a) should lead the court to conclude Defendant was the owner of the Vehicle at the time of the accident. Plaintiffs cite *Peterson v. Ford Motor Credit Co.*, 448 N.W.2d 316 (Iowa 1989) and *Lyons v. Andersen*, 123 F. Supp. 2d 485 (N.D. Iowa 2000) (Zoss, Mag. J.). Plaintiffs are incorrect.

To be sure, *Peterson* held a lessor liable under Iowa Code § 321.493, but *Peterson* was decided prior to a key amendment to this statute. At the time the Iowa Supreme Court decided *Peterson*, § 321.493 did not contain an exemption for lessors. In 1995, however, the Iowa legislature amended this statute by defining "owner" and adding the language exempting a lessor from liability. 1995 Iowa Legis. Serv. 136 (West); *see also Veasley*, 553 N.W.2d at 900-01 (noting the 1995 amendment defines an owner as "the person to whom the vehicle is leased"). In other words, the 1995 amendment effectively abrogated *Peterson*.

*Lyons* was decided subsequent to the 1995 amendment and it properly applies § 321.493. *Lyons* held the amended statute "provides that, as a *lessee*, [Defendant] is considered 'owner' of the vehicle for purposes of civil liability." *Lyons*, 123 F. Supp. 2d at 504 (emphasis added). Clearly, § 321.493 exempts lessors, not lessees, from liability. Under Iowa Code § 321.493, Defendant, a lessor of the Vehicle to Ms. Gannon, cannot

be held vicariously liable for Ms. Gannon's negligence. Section 321.493 only makes Ms. Gannon liable in this case.[5]

### ii. Constitutionality of § 321.493

Plaintiffs also argue the court should not apply the lessor liability exemption in § 321.493 because it violates equal protection laws under the Iowa and United States Constitutions. Like the argument made in the context of the Graves Amendment, Plaintiffs argue § 321.493 creates two classes of plaintiffs injured in automobile accidents: "those who have a right to recover from the owner and those whose right is permanently extinguished because the vehicle being driven with the consent of the owner, which caused the harm, was leased from a company like [Defendant]." Resistance Br. at 19. This argument suffers from the same fatal defect as Plaintiffs' constitutional challenge to the Graves Amendment—there is no distinct classification to form the basis of any constitutional challenge. Under the statute, every vehicle has an owner, whether a lessee or otherwise, and a plaintiff injured in a car accident can always seek recovery from the vehicle's "owner." Accordingly, Plaintiffs' constitutional challenge fails. *See Johnson*, 152 F.3d at 862 ("To state an equal protection claim, [a plaintiff] must have established that he [or she] was treated differently from others similarly situated to him [or her]."); *Wade*, 757 N.W.2d at 625 ("Where there is no disparate treatment of similarly situated individuals, an equal protection claim fails.").

Even if a separate classification existed, Plaintiffs have failed to satisfy their burden to show Iowa Code § 321.493 is not rationally related to a legitimate governmental objective. "A classification is reasonable if it is 'based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which

---

[5] The parties devote substantial analysis to whether Defendant, as the purported "owner" of the Vehicle, consented to Ms. Gannon's continued use of the Vehicle. Because the court finds that Defendant was not the "owner" of the Vehicle at the time the accident occurred, it need not analyze this issue.

establishes the necessity or propriety of distinction between them.'" *In re Morrow*, 616 N.W.2d 544, 548 (Iowa 2000) (quoting *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999)). "'The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things.'" *Id.* (quoting *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975)). Presumably, like the Graves Amendment, § 321.493 has a legitimate interest in that it makes motor vehicle leases more affordable for consumers. This statute is constitutional. Additionally, similar statutes in other states have survived equal protection challenges. *See Phillips v. Mirac, Inc.*, 685 N.W.2d 174, 186 (Mich. 2004) (concluding statute limiting vicarious liability for lessors of automobiles was rationally related to legitimate governmental interest); *Abdala v. World Omni Leasing, Inc.*, 583 So.2d 330, 334 (Fla. 1991) (stating same). Accordingly, the court finds this statute passes constitutional muster.

In summary, the court finds that Iowa Code § 321.493 exempts Defendant from vicarious liability for Ms. Gannon's negligence.

## C. Negligence

Plaintiffs' negligence claims allege Defendant committed the following three separate negligent acts or omissions: (1) negligently entrusting the Vehicle to Ms. Gannon even though Defendant should have known she "was unfit, irresponsible, a user of illicit drugs, and likely to cause injury"; (2) failing to take reasonable steps to enforce the Replevin Judgment and repossess the Vehicle; and (3) failing to discover Ms. Gannon "was operating the [V]ehicle while impaired[] and without insurance in violation of Iowa and Wisconsin law." Complaint at ¶ 19. Defendant argues the court should dismiss Plaintiffs' negligence claims because they are "merely an attempt to get around the Graves Amendment." Brief in Support of Motion at 24.

Plaintiffs argue the Graves Amendment expressly allows their negligence claims because it exempts a lessor of a motor vehicle from liability for the acts of a driver, but

only if "there is no negligence or criminal wrongdoing on the part of the owner[.]" 49 U.S.C. § 30106(a)(2). Stated another way, the Graves Amendment does not exempt a lessor from liability for its own negligent acts—the exemption only applies to the negligent acts of a lessee. *See Garcia*, 540 F.3d at 1248 (noting Congress drew a distinction "'between liability based on the companies' own negligence and that of their lessees"). The question becomes whether the "negligence" to which the Graves Amendment exception refers encompasses Plaintiffs' theories of negligence.

The scope of the Graves Amendment negligence exception was discussed at length in *Dubose v. Transport Enter. Leasing, LLC*, No. 6:08-cv-385-Orl-31DAB, 2009 WL 210724 (M.D. Fla. Jan. 27, 2009):

> While numerous courts have passed on the constitutionality and general applicability of the Graves Amendment, only a handful have considered the applicability of the savings clause in § 30106(a)(2). *See Berkan v. Penske Truck Leasing Can., Inc.*, 535 F. Supp. 2d 341 (W.D.N.Y. 2008) (granting lessor's motion for summary judgment where plaintiffs failed to adduce any evidence of lessor's negligence, including lessor's failure to maintain brakes on 2003 Freightliner tractor-trailer); *Vedder v. Cox*[], [No. 19367/06,] 859 N.Y.S.2d 900 (N.Y. Sup. Ct. 2008) (granting defendant[-]lessor's motion to dismiss where, *inter alia*, plaintiff failed to supply any legal authority imposing a legal duty on lessors to investigate lessees' driving records); *Novovic v. Greyhound Lines, Inc.*, No. CV-08-3[1]90 [(CPS)], 2008 WL 5000228 (E.D.N.Y. Nov. 19, 2008) (relying on *Colon v. Bernabe, infra*, and concluding that plaintiff could assert claim for negligent maintenance against bus leasing company where leasing company agreed to maintain bus in lease agreement); *Colon v. Bernabe*, No. 07-C[iv]-3369[(AJP)], 2007 WL 2068093 (S.D.N.Y. July 19, 2007) (conducting cursory examination of Graves Amendment legislative history and concluding that, where lease agreement requires a lessor to maintain a vehicle, § 30106(a)(2) permits a plaintiff to assert a negligence claim against the lessor for failure to maintain vehicle, but also expressing concern that

"plaintiffs can defeat the spirit of § 30106" on a motion to dismiss by merely alleging that the leasing company was negligent in maintaining the vehicle); *Escaleria v. Powell*, No. CV065004566S, 2007 WL 4210982 (Conn. Super. Ct. Nov. 6, 2007) (granting motion to strike plaintiff's negligence claim against defendant-lessor where [s]tate law did not require lessor to ensure that lessee maintained insurance coverage and where defendant-lessor's failure to ensure that lessee maintained adequate insurance was not, as a matter of law, a proximate cause of plaintiff's injury). Absent some evidence of a lessor's failure to properly maintain a vehicle which it has expressly agreed to maintain pursuant to a lease agreement, or some similar active negligence on the part of the lessor, the conclusion reached by these courts is that § 30106(a)(2) is rarely applicable and should be cautiously applied in light of Congress' clear intent to forestall suits against vehicle leasing companies. *Id.* Indeed, unless a State specifically imposes a legal duty on lessors to ensure that their lessees maintain adequate insurance or to ensure that their lessees have adequate driving records, § 30106(a)(2) only appears to apply to claims predicated on criminal wrongdoing and negligent maintenance claims—not claims of negligent entrustment.

*Dubose*, 2009 WL 210724, at *4 (footnote omitted). The court concurs with *Dubose*'s interpretation of § 30106(a)(2) and adopts it in full. Plaintiffs' negligence claims do not assert that Defendant committed any criminal acts or that it was negligent in maintaining the Vehicle. And, Plaintiffs fail to point to any legal authority imposing a duty on Defendant to ensure that its lessees comply with the various duties asserted in the Complaint. Accordingly, the court concludes that Plaintiffs' negligence claims fall outside the ambit of the savings clause in § 30106(a)(2) and should be dismissed.

Because the court finds that the Graves Amendment bars Plaintiffs' negligence claims, it need not address Defendant's alternate argument, that is, whether the negligence claims state a claim upon which relief can be granted.

### VII. CONCLUSION

In light of the forgoing, the Motion (docket no. 9) is **GRANTED** and the Complaint (docket no. 2) is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED** this 14th day of July, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA